IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Maketia Clark,                          )        Civil Action No. 8:11-cv-02585-MGL-JDA
                     Plaintiff,         )
                                        )
          vs.                           )        **REPORT AND RECOMMENDATION**
                                        )        **OF MAGISTRATE JUDGE**
Michael J. Astrue,                      )
Commissioner of Social Security,        )
                                        )
                     Defendant.         )

          This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claim for supplemental security income ("SSI").[2]  For the reasons set forth below, it is

recommended that the decision of the Commissioner be affirmed.

<u>**PROCEDURAL HISTORY**</u>

          In November 2009, Plaintiff protectively filed a claim for SSI, alleging an onset of

disability date of June 28, 2008.[3]  [R. 88–95.]  The claim was denied initially and on

reconsideration by the Social Security Administration ("the Administration").  [R. 58–60,

65–68.]  On June 10, 2010, Plaintiff requested a hearing before an administrative law judge

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

[3] Plaintiff previously filed an application for SSI in March 2009, alleging the same onset date.  [R. 81–87.] This application was denied initially on May 15, 2009 [R. 61–64], and Plaintiff did not further appeal.

("ALJ") [R. 77–79], and on January 5, 2011, ALJ Harold Chambers conducted a de novo hearing on Plaintiff's claims [R. 29–54].

The ALJ issued a decision on April 8, 2011, finding Plaintiff not disabled as defined by the Social Security Act ("the Act"). [R. 21–28.] At Step 1,[4] the ALJ found Plaintiff had not engaged in substantial gainful activity since November 9, 2009. [R. 23, Finding 1.] At Step 2, the ALJ found Plaintiff had severe impairments of asthma, obesity, hypertension, headaches, lumbago, neck pain, and bilateral shoulder pain. [R. 23, Finding 2.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listing 1.04. [R. 24, Finding 3.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ made the following findings as to Plaintiff's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). I specifically find the claimant can lift and/or carry up to 15 pounds on an occasional basis and 10 pounds on a frequent basis. She can stand or walk for 6 hours out of an 8-hour workday and sit for 6 hours out of an 8-hour workday, with normal allowable breaks. The use of the upper extremities in the operation of push or pull controls can be done on an occasional basis, bilaterally. The use of the lower extremities in the operation of foot controls can be done on an occasional basis, bilaterally. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, no more than 6 to 8 at any one time. She can balance for one-half of the work period. The claimant can occasionally stoop, kneel, and crawl, but cannot crouch. The claimant must avoid concentrated exposure to extreme[] cold, extreme heat, wetness, and humidity. She must avoid even moderate exposure to

---

[4] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> excessive vibrations, environmental irritants (such as fumes, odors, dusts and gases), poorly ventilated areas, and exposure to chemicals. She must avoid moderate exposure to hazards (exemplified by use of moving machinery and exposure to unprotected heights). The claimant is also limited to simple, routine, and repetitive tasks.

[R. 24–25, Finding 4.] As a result of her RFC, at Step 4, the ALJ found Plaintiff was capable of performing her past relevant work as a cashier. [R. 26, Finding 5.] Although Plaintiff could perform her past relevant work, the ALJ also made alternate findings at Step 5 of the sequential analysis, determining other jobs existed in significant numbers in the national economy that Plaintiff was able to perform. [R. 27, Findings 6 & 8.]

Plaintiff requested Appeals Council review of the hearing decision [R. 6], and on July 8, 2011, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review [R. 1–5; 20 C.F.R. § 416.1481]. Plaintiff filed this action for judicial review on September 26, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ

1. failed to explain how Plaintiff's obesity limited her ability to perform work-related functions [Doc. 20 at 12–13; Doc. 23 at 1–3];

2. failed to provide specific reasons for his credibility determination [Doc. 20 at 13–15; Doc. 23 at 3–6];

3. failed to make any substantive inquiry into Plaintiff's past work before determining she could return to her past work [Doc. 20 at 15–16; Doc. 23 at 6–7]; and

4. failed to show Plaintiff was capable of performing the jobs identified by the VE, and the VE's testimony was inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT") and Social Security Ruling ("SSR") 00-4p [Doc. 20 at 17–19; Doc. 23 at 7–10].

3

The Commissioner, on the other hand, argues the ALJ's decision is supported by substantial evidence and that the ALJ

1.  reasonably considered Plaintiff's obesity in combination with her other impairments [Doc. 22 at 7–9];

2.  properly evaluated Plaintiff's credibility [*id.* at 9–11];

3.  reasonably found Plaintiff retained the ability to perform her past work as it was generally performed [*id.* at 11–12]; and

4.  reasonably found that, in the alternative, Plaintiff could perform other work [*id.* at 12–17].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

4

[Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See*

---

[5] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims). The ALJ must consider whether (1) the claimant is

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

impairment meets or equals an impairment included in the Administration's Official Listings

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

the claimant from performing past relevant work; and (5) the impairment prevents the

claimant from having substantial gainful employment. 20 C.F.R. § 416.920. Through the

fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699

F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* § 416.974–.975.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir.

1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

## C.  *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]   20 C.F.R. § 416.920(a)(4)(iii), (d).

## D.  *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we

---

[7] Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

[8] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).   A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 416.969a(c)(1).

have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

13

for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

14

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling

pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree,

alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## <u>APPLICATION AND ANALYSIS</u>

**Obesity**

Plaintiff contends the ALJ acknowledged Plaintiff's obesity was a severe impairment but failed to properly consider this impairment in combination with her other impairments. [Doc. 20 at 12–13.]   Consequently, Plaintiff argues the ALJ's decision ignores the requirement imposed by SSR 02-1p to explain how determination as to whether obesity caused any physical or mental limitations.  [*Id.* at 13 (quoting SSR 02-1p, Fed. Reg. 57,859-02, at 57,863 (Sept. 12, 2002).]

SSR 02-1p defines obesity as a "complex, chronic disease characterized by excessive accumulation of body fat."  67 Fed. Reg. at 57,860.  The Ruling recognizes

obesity can cause limitations in all exertional and postural functions.  *See id.*  Pursuant to SSR 02-1p, the ALJ must consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from performing her past relevant work or other work in the national economy.  *Id*. at 57,861.  When assessing a claimant's RFC, the ALJ is to consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity."  *Id.* at 57,862–63.

Here, as stated, the ALJ found Plaintiff's obesity, asthma, hypertension, headaches, lumbago, neck pain, and bilateral shoulder pain to be severe impairments [R. 23] but also found that neither an individual impairment nor a combination of her impairments met or equaled a listed impairment [R. 24].  The ALJ then determined Plaintiff retained the RFC to perform light work, with some restrictions.  [*Id.*]  The ALJ explained his RFC assessment as follows:

> In terms of the claimant's alleged shoulder, neck, and back pain, I have limited the claimant to light work with additional postural limitations.  In reaching this conclusion, I note that the medical record evidences reports of chronic lower back pain dating back to 2006.  She was later diagnosed with lumbago. The record also indicates occasional reports of neck and shoulder pain; however, there was no diagnosed chronic condition or impairment attributed to these symptoms. Moreover, these impairments and her alleged limitations are exacerbated by her morbid obesity.  While the claimant testified that her back, neck and shoulder pain severely limits her day-to-day activities, I find the diagnostic evidence fails to substantiate these allegations.  An MRI of the lumbar spine

revealed minimal facet arthropathy at L5-S1 and mild facet arthropathy at L4-5 with no significant spinal stenosis. On September 28, 2010, Dr. Franklin noted that the claimant's MRI and x-ray were unremarkable. Treatment notes of consultative examiners also indicate the claimant is less limited than she alleges. Dr. Patel noted that the claimant had normal strength and senses in her upper and lower extremities. He also noted that the claimant's range of motion in her neck, shoulders, and back are not restricted much except for a slight problem with flexion in the neck.

In support of the above residual functional capacity assessment, I have attributed great weight to the opinions of the state agency medical examiners, who are familiar with Social Security laws and regulations. State agency consultative examiner Dr. Ferrell completed a physical residual functional capacity assessment of the claimant and found her to be able to perform light work with the following postural limitations: frequent climbing ramps/stairs, frequent balancing, frequent kneeling, occasional stooping, occasional crouching, occasional crawling, and never climbing ladders/ropes/scaffolds. Dr. Ferrell also noted that the claimant should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poorly ventilated areas, and hazards. Dr. Ferrell's opinion was reaffirmed by Kirby Von Kessler, M.D., on May 17, 2010. I find the limitations espoused by Dr. Ferrell and affirmed by Dr. Von Kessler to be consistent with the other medical evidence, specifically, the observations of consultative examiner Dr. Patel and Dr. Franklin's treatment notes.

In terms of the claimant's alleged hypertension, headaches, and asthma, I have [] limited the claimant's exposure to environmental irritants. However, I find that the record does not necessitate the imposition of additional limitations. For instance, Dr. Patel noted that the claimant's headaches and asthma are stable. At the hearing, the claimant stated that she has not had any recent asthma attacks and she has only had blood pressure problems two times. Moreover, she has not been prescribed hypertension medication by her treating physicians.

In sum, I find the residual functional capacity assessment supported by the weight of the medical evidence and the opinions of the state agency medical consultants.

19

[R. 25–26 (citations omitted).]

Upon review, the Court has failed to discern reversible error in the ALJ's consideration of Plaintiff's obesity in rendering his decision.  A plain reading of the decision reflects that the ALJ found Plaintiff's obesity was a severe impairment, that he considered the medical evidence concerning the effect this impairment had on Plaintiff's physical abilities in conjunction with the medical evidence concerning Plaintiff's other impairments, and that he considered the effect all of these impairments on Plaintiff's RFC.  The Court also notes the ALJ largely adopted the limitations suggested by Plaintiff's physicians and the consultative examiners, who were aware of and noted Plaintiff's obesity [R. 267, 272, 274, 282, 285, 288, 297], which indicates the ALJ's decision reflects Plaintiff's limitations based on her obesity. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (holding the ALJ's adoption of physicians' conclusions, when the physicians were aware of the claimant's "obvious obesity," constituted satisfactory consideration of the claimant's obesity and declining to remand the case because explicitly considering the claimant's obesity would not affect the outcome of the case); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (finding harmless error where the ALJ did not address the claimant's obesity but did adopt "the limitations suggested by the specialists and reviewing doctors" who were aware of the condition).

Critically, Plaintiff has offered no argument as to what additional limitations she suffers as a result of her obesity beyond those that the ALJ acknowledged.  [*See* Doc. 23 at 2–3 ("Ms. Clark specifically testified that her weight causes her 'some problems' sitting comfortably, and it is impossible to imagine that Clark's obesity, at 258 pounds, body mass index of 42.9 and a class III obesity, all admitted by the Administration's doctors caused

20

no difficulty, say, standing and walking whatsoever.  But we don't have to argue that obesity might have caused some limitation, since the ALJ has in fact found the obesity did cause some limitation: The ALJ found the obesity to be a severe impairment." (citing R. 23, 42, 272)).]  While obesity can cause limitations in exertional and postural functions such as sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balancing, stooping, crouching, the ability to manipulate, and the ability to tolerate environmental extremes, SSR 02-1p, 67 Fed. Reg. at 57,862, there is no evidence Plaintiff's alleged obesity produced exertional limitations upon Plaintiff's abilities that would impair Plaintiff beyond the RFC assessed by the ALJ.  In this sense, Plaintiff has failed to demonstrate that any error by the ALJ with respect to Plaintiff's obesity was anything other than harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"); *Elder v. Astrue*, No. 3:09-2365, 2010 WL 3980105, at *9 (D.S.C. Oct. 8, 2010) ("As neither her medical records, nor her own statements, provide [evidence of the effect on her functioning or ability to work resulting from] her obesity, any failure of the ALJ to explicitly address [the claimant]'s obesity is only harmless error."); *Gassaway v. Astrue*, No. 8:07-4083, 2009 WL 462704, at *10 (D.S.C. Feb. 23, 2009) (finding no error in the ALJ's assessment of the effect of obesity in combination with claimant's other impairments where claimant offered no argument as to what limitations she would experience as a result of her obesity).  Thus, the Court concludes the ALJ's decision with respect to the effects of Plaintiff's obesity is supported by substantial evidence.

**Credibility**

Plaintiff complains that, while the ALJ discredited Plaintiff's complaints of pain because there were minimal findings on diagnostic tests, the ALJ failed to explain how this fact lessens Plaintiff's complaints. [Doc. 20 at 14.] Plaintiff argues that, in light of her level III obesity, "there is good indication that [her] 'minimal' findings, in combination with her obesity, would cause her to suffer more extreme symptoms than her physical impairments would cause independently without obesity." [*Id.*] Plaintiff also argues the ALJ failed to acknowledge that Plaintiff was prescribed narcotic pain medication and that the ALJ unreasonably utilized Dr. Patel's evaluation to discredit Plaintiff's allegations. [R. 14–15.] Additionally, Plaintiff contends it is unreasonable to say the ALJ properly found Plaintiff was incredible based on assigning great weight to the state examiners' opinions because the ALJ failed to explain the inconsistencies between their opinions and his decision. [Doc. 23 at 4–5.] Finally, Plaintiff argues any error by the ALJ is not harmless because there is uncertainty regarding whether a contrary determination regarding Plaintiff's credibility would affect the outcome of the decision. [*Id.* at 5.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

22

the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765

F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the

evidence informing the ALJ's conclusions").

Here, the ALJ found Plaintiff had medically determinable impairments that could

reasonably be expected to cause the symptoms of which she complained; however, he

found Plaintiff's statements concerning intensity, persistence and limiting effect not credible

to the extent they were inconsistent with his RFC assessment. [R. 25.] As stated, the ALJ

noted Plaintiff's complaints that back, neck, and shoulder pain severely limited her day-to-

day activities were not substantiated by the diagnostic evidence. [R. 25–26.] The ALJ

pointed out diagnostic evidence including an MRI of the lumbar spine that revealed minimal

facet arthropathy at L5-S1 and mild facet arthropathy at L4-5 with no significant spinal

stenosis [R. 26], and he also noted there was no diagnosed chronic condition or

impairment attributed to Plaintiff's alleged symptoms [R. 25]. Additionally, the ALJ

acknowledged Plaintiff's testimony that her medication makes her drowsy [*id.*] and gave

great weight to Dr. Ferrell's opinion that Plaintiff should avoid hazards "due to Lortab use

and obesity" [R. 26, 274]; the ALJ also incorporated into the RFC assessment a limitation

that Plaintiff must avoid exposure to hazards [R. 25].

Upon review, the Court concludes the ALJ adequately explained his credibility

determination and that such determination is supported by substantial evidence. The ALJ

acknowledged that Plaintiff's alleged symptoms were not supported by objective evidence

and determined Plaintiff's allegations were incredible to the extent she alleged she was

more limited than reflected in the ALJ's RFC assessment. [R. 25–26.] Plaintiff has failed

to detail exactly how the ALJ's explanation is deficient; Plaintiff assigns three errors to the

23

ALJ's credibility determination but fails to explain how any of the three alleged errors affect the outcome of the ALJ's decision.[9]    Moreover, the Court finds the ALJ's decision addresses each of the three areas that Plaintiff alleges the ALJ overlooked.  As previously stated, the ALJ acknowledged Plaintiff's testimony regarding medicinal side effects and gave great weight to Dr. Ferrell's opinion that Plaintiff should avoid hazards, which limitation Dr. Ferrell imposed because of Plaintiff's narcotic pain medication and obesity; thus, the ALJ was aware of Plaintiff's use of pain medications and her obesity and apparently limited Plaintiff's exposure to hazards based on these conditions.[10]  Further, the ALJ acknowledged that Dr. Patel found Plaintiff was somewhat limited, and through the RFC assessment, the ALJ ultimately determined Plaintiff was somewhat limited, just not

---

[9]Plaintiff seems to argue that, because of her obesity, pain medications, and Dr. Patel's finding that she has a slight problem with flexion in her neck, which may be arthritis, and that her weight may be putting pressure on her back, her allegations were more credible than determined by the ALJ.  [*See* Doc. 20 at 14–15.]  However, Plaintiff has failed to explain how her obesity, pain medications, possible arthritis, and possible weight-related back problems lend credibility to any allegations that are inconsistent with the ALJ's RFC assessment.

[10]As stated above, Plaintiff argues it is unreasonable use the weight assigned to the state agency examiners' opinions to conclude the ALJ's credibility determination was proper because the ALJ failed to explain the inconsistencies between their opinions and his decision—i.e., the ALJ failed to explain why he found Plaintiff was limited to light work when the state examiners found Plaintiff was limited to medium work. [Doc. 23 at 4–5.]  The Court disagrees.  In addition to assigning great weight to the state examiners' opinions, the ALJ also indicated that he gave some credit to Plaintiff's allegations that were inconsistent with the examiners' opinions [R. 25]; that is, the ALJ's decision reveals that he credited the examiners' opinions as well as Plaintiffs' allegations that she was somewhat more limited than the examiners concluded, essentially giving Plaintiff the benefit of the doubt without ignoring the weight of the evidence of record, which failed to support a finding of disability.

to the extent Plaintiff alleged.[11]  The Court concludes the ALJ's decision lays out his reasons for discrediting Plaintiff's allegations and is supported by substantial evidence.

**Past Relevant Work**

Plaintiff contends the ALJ erred in finding Plaintiff could return to her past work as a cashier because the ALJ failed to inquire into the way in which Plaintiff performed her past work. [Doc. 20 at 15.] Specifically, Plaintiff argues the ALJ failed to conduct a legally-sufficient inquiry into Plaintiff's past work because he failed to inquire of Plaintiff the physical and mental requirements of her past work as required by 20 C.F.R. § 404.1565(b). [*Id.* at 16.]

At Step 4 of the sequential evaluation, the ALJ must assess the claimant's RFC and determine whether the claimant has an impairment that prevents past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).   In making this determination, the ALJ can utilize VEs, vocational specialists, or other resources to determine whether a claimant can perform his or her past relevant work.  *Id.* § 416.960(b)(2).  In this capacity, a VE

> may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's

---

[11]Additionally, while Plaintiff would have the Court adopt her argument that, in light of her level III obesity, "there is good indication that [her] 'minimal' findings, in combination with her obesity, would cause her to suffer more extreme symptoms than her physical impairments would cause independently without obesity," such conjecture is prohibited by SSR 02-1p:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record.

SSR 02-1p, 67 Fed. Reg. at 57,862.  As explained above, the Court has concluded that the ALJ's decision as it relates to Plaintiff's obesity is supported by substantial evidence.  Accordingly, the Court finds Plaintiff's argument is without merit.

> previous work, either as the claimant actually performed it or
> as generally performed in the national economy.

*Id.*

However, at Step 4, the burden still rests with the claimant to prove that she is unable to perform past relevant work, i.e., the claimant is required to "show an inability to return to her previous work (i.e., occupation), and not simply to her specific prior job." *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981)). Additionally, the ALJ is permitted to rely on the general job categories of the DOT as presumptively descriptive of a claimant's prior work. *Id.* The ALJ is under an affirmative duty to inquire into conflicts between the VE's testimony and the DOT. *See Haddock v. Apfel*, 196 F.3d 1084, 1087 (4th Cir. 1999) ("We hold that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of non-disability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.").

Here, in determining Plaintiff's ability to perform past relevant work as a cashier, the ALJ relied on the testimony of a vocation expert ("VE"), who concluded that, based on her RFC, Plaintiff could perform her past relevant work as a cashier at a convenience store, DOT #211.462-010, which is light and unskilled work with a specific vocational preparation ("SVP")[12] of 2. [R. 26.] The VE considered Plaintiff's past work and found that Plaintiff's

---

[12]Specific vocational preparation is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, part II, 1991 WL 688702. "SVP 2 means anything beyond short demonstration up to and including 1 month, while SVP 3 requires over 1 month or up to and including 3 months to learn." [Doc. 22 at 14 n.8.]

work as a cashier was light, unskilled work.  [R. 47.]  The VE also considered a

hypothetical person of Plaintiff's age, with the education and work history reflected in the

record, and with the same RFC the ALJ assessed for Plaintiff.[13]  [R. 49–50.]  Given those

limitations, the VE found Plaintiff could perform her past relevant work as a cashier, DOT

#211.462-010.  [R. 50.]  The VE also testified that the jobs he cited were consistent with

the terms and descriptions contained in the DOT and that had there been any

inconsistencies he would have identified them [R. 52], and the ALJ concluded the VE's

testimony was consistent with the DOT and SSR 00-4p [R. 27, 52; *see* SSR 00-4p, 2000

WL 1898704, at *1 (Dec. 4, 2000) (examining the use of vocational experts)].  Therefore,

the VE testified that Plaintiff was capable of performing her past work as a cashier and that

work was consistent with a given DOT number, indicating Plaintiff could perform her past

---

[13]Specifically, the ALJ posed the following hypothetical to the VE:

. . . Please assume a person of [Plaintiff's] age, she was 32 as of the alleged onset date. She's presently 35. The education that is reflected in the record in the testimony and the work experience and skillset in that past relevant work and then the person is capable of the following additional things. Light work, defined as the ability to left up to 15 pounds occasionally, lift or carry up to 10 pounds frequently, stand or walk for approximately 6 hours in an 8-hour workday and sit for approximately 6 hours in an 8-hour workday. Both of those things done with the normal breaks.

The use of the upper extremities in the operation of push or pull controls can be done bilaterally occasionally. The operation of foot controls involving the use of the lower extremities can be done bilaterally occasionally. The person cannot climb ladders[,] ropes or scaffolds, can occasionally climb ramps or stairs, no more than 6 to 8 at any one time. Can balance for one half of the work period, quantified as 4 hours out of 8. Can occasionally stoop, cannot crouch, can occasionally kneel, can occasionally crawl.

The individual has a number of environmental limitations as follows. Must avoid concentrated exposure to extreme cold, extreme heat, wetness or humidity. Must avoid even moderate exposure to excessive vibration. Must avoid even moderate exposure to environmental irritants, exemplified by such things as fumes, odors, dust and gases, exposure to poorly ventilated areas, and exposure to chemicals and must avoid even moderate exposure to hazards exemplified by such things as the use of moving machinery, exposure to unprotected heights.

And the work that the person can do is limited to the performance of simple[,] routine and repetitive tasks.

[R. 49–50.]

work as it is generally performed.  *See* SSR 82-61, 1982 WL 31387, at *2 (1982) ("The

*Dictionary of Occupational Titles* (DOT) descriptions can be relied upon – for jobs that are

listed in the DOT – to define the job as it is *usually* performed in the national economy."

(emphasis in original)).  The ALJ clearly relied on the VE's testimony to determine Plaintiff

could perform her past relevant work as a cashier [R. 26–27], as he is entitled to do, 20

C.F.R. § 416.960(b)(2).[14]  Thus, the Court concludes the ALJ's decision as to past relevant

work was proper and is supported by substantial evidence.

**Alternative Findings**

Plaintiff contends the ALJ's finding that she could perform other jobs in the national

economy is not supported by evidence and that the VE's testimony is inconsistent with the

information contained in the DOT and with SSR 00-4p.  [Doc. 20 at 17.]  The ALJ made

alternative findings at Step 5, finding, based on the testimony of the VE, that Plaintiff could

perform the requirements of representative occupations such as packer, DOT

#753.687-038; marker/pricer, DOT #209.587-034; and assembler, DOT #706.687-022.  [R.

27–28.]  Pursuant to SSR 00-4p, the ALJ found the VE's testimony regarding these

alternative jobs available to Plaintiff to be consistent with the information contained in the

DOT.  [*Id.* at 28.]  Plaintiff contends that she was limited to simple, routine, repetitive tasks,

restricting her to a reasoning level 1 (GED R1), and that the jobs described by the VE

required reasoning levels 2 and 3.  [Doc. 20 at 17.]  While the ALJ asked and the VE

---

[14] Plaintiff has offered no explanation as to how her cashier work at a convenience store differed from how such work is generally performed; Plaintiff mentions only her work in fast food restaurants, which apparently only a small portion of which was cashier work.  [Doc. 20 at 15–16.]

28

confirmed no conflicts exist between his findings and the DOT, Plaintiff contends conflicts exist.  [*Id.* at 18.]

Because Plaintiff failed to make a showing at Step 4 of her inability to perform her past relevant work, the burden never shifted to the Commissioner to come forward with evidence of Plaintiff's ability to perform alternative work in the national economy.  *See Harper v. Bowen*, 854 F.2d 678 (4th Cir. 1988); *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987).  Thus, the Court declines to consider any error made by the ALJ at Step 5 because the sequential analysis stopped at Step 4.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

December 14, 2012
Greenville, South Carolina